UNITED STATES, Appellee

v.

ERNEST SMITH, Private First Class, U. S. Army, Appellant

4 USCMA 369, 15 CMR 369

No. 3260

Decided May 28, 1954

LT COL Herman P. Goebel, Jr., U. S. Army, and 1ST LT David J. Conroy, U. S. Army, for Appellant.

LT COL Paul J. Leahy, U. S. Army, for Appellee.

GEORGE W. LATIMER, Judge:

On February 5, 1953, the accused was found guilty by a general court-martial of one offense of larceny of a package from the mail in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for one year. The convening authority approved. The board of review reduced the offense found to larceny of property worth no more than twenty dollars, reduced the term of confinement to six months, and affirmed. We granted accused's petition for review so that we might consider the admissibility of a confession used against him at trial in view of the unusual objection offered by the defense counsel.

On July 17, 1952, Mrs. Lopez de Cotto-Ojeda, in Bayamon, Puerto Rico, mailed to her husband, Sergeant Luis S. Cotto-Ojeda, stationed in the Panama Canal Zone, a package containing items of civilian clothing. Sergeant Cotto-Ojeda never received the package. Accused was at that time employed in the message center of the sergeant's regiment, through which the package normally would have passed. The missing items of clothing were subsequently found in an apartment shared by the accused and his foster mother. On August 30, 1952, accused executed a pretrial statement which amounted to a confession of the larceny of the package involved here and the later larceny of two letters.

Early in January 1953 the accused was tried for larceny of the two letters. At that prior trial the law officer excluded the confession of the accused from evidence on the ground that Criminal Investigation Division Agent Rhein had taken the statement from him without first having complied with the provisions of Article 31 (b), Uniform Code of Military Justice, 50 USC § 602, which require that an accused be warned of his right not to make a statement before being interrogated.

The accused was thereafter acquitted upon a motion for a finding of not guilty based on the insufficiency of the evidence.

At the present trial for larceny of the package defense counsel objected to the admission of accused's pretrial statement on the ground of res judicata. He contended that the ruling in the prior case was binding on the Government and it was estopped from using the confession to support a finding of guilt in the instant case. The law officer overruled the objection and received the pretrial statement in evidence. It is conceded in this case that the identical written confession was offered in both trials; that the same evidence was used as a predicate for its offering in each; and that both prosecutions involved the same parties.

The doctrine of res judicata in a definitive sense includes all the binding effects of prior adjudication. It is defined as "a matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment." Black's Law Dictionary, 4th ed, 1951. The legal concepts denoted by the terms "merger," "bar," "former jeopardy," "direct estoppel," and "collateral estoppel" properly are all embraced in the term.

As normally used, res judicata once referred to the doctrine that "a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties." Frank v. Mangum, 237 US 309, 334, 50 L ed 969, 983, 35 S Ct 582 (1915); Southern Pacific R. Co. v. United States, 168 US 1, 48, 42 L ed 355, 377, 18 S Ct 18 (1897); 2 Freeman, Judgments, 5th ed, § 648. Presently, however, the same doctrine has been designated by various jurisdictions and authors, "estoppel by judgment," Spence v. Erwin, 200 Ga 672, 673, 38 SE2d 394, 395 (1946); "estoppel by verdict," Wolfson v. Northern States Management Co., 221 Minn 474, 477, 22 NW2d 545, 547

(1946); and "collateral estoppel," The Restatement of the Law of Judgments, The American Law Institute, 1942, § 68, Comment *a*. The Restatement defines collateral estoppel as that aspect of res judicata concerned with the effect of a final judgment on subsequent litigation of a different cause of action involving some of the same issues determined in the initial action. In all these usages there is involved but one theory, the effect to be given a prior determination.

Res judicata has not always been recognized as operative in the field of criminal law, except in so far as the more limited theory of "former jeopardy" was a factor. It was suggested in Frank v. Mangum, supra, that "The principle [of res judicata] is as applicable to the decisions of criminal courts as to those of civil jurisdiction," but a definite holding to that effect was not made until the case of United States v. Oppenheimer, 242 US 85, 87, 61 L ed 161, 164, 37 S Ct 68, 3 ALR 516 (1916). In that case Justice Holmes, the organ of the Court, said:

"Upon the merits the proposition of the government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt."

The doctrine of res judicata was first recognized in military law in the case of United States v. Lawton, 28 BR(ETO) 293, 301, wherein it was said that "the issues of fact and law between the United States and accused which were adjudicated and determined by the courts finding in the Lilly case [where accused was a joint defendant] are binding upon the Government in its subsequent prosecution of accused in the case under review [apart from any question of former jeopardy]." The present Manual for Courts-Martial, United States, 1951, paragraph 71*b*, page 110, codifies the rule in the following language:

"The defense of *res judicata* is based on the rule that any issue of fact or law put in issue and finally determined by a court of competent jurisdiction cannot be disputed between the same parties in a subsequent trial even if the second trial is for another offense. The accused, in a proper case, may assert an issue of fact finally determined by an acquittal as a defense."

We need not concern ourselves with the civil doctrine of mutuality between parties as, while civilian cases differ on the question (compare Steele v. United States, 267 US 505, 69 L ed 761, 45 S Ct 417 (1925); United States v. Carlisi, 32 F Supp 479, 482 (ED NY 1940); and United States v. De Angelo, 138 F2d 466, 468 (CA3d Cir 1943)), in military law res judicata is only a defense, except in one specific factual situation not here applicable and set forth by the Manual, supra. It is not "a two edged sword." Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 90. Phrased differently, the framers of the Manual intended to provide that res judicata "is a defense to any issue or element of an offense previously adjudicated between the same part[ies]." Legal and Legislative Basis, supra, page 89.

In most civilian cases the doctrine has been applied largely in instances where a jury has made a determination of guilt or innocence. In those situations there was a factual finding which had to be necessarily re-litigated in the subsequent case. Illustrative of the principle are cases which involve the prosecution for a substantive of-

**372**

fense based on a particular overt act and a conspiracy based on the same act. If the verdict finally determined that the defendant did not commit the overt act, the finding was binding on the prosecution in a suit involving a conspiracy. Conversely, however, a finding of not guilty on a conspiracy charge did not operate to estop the prosecution from proceeding with the substantive offense as the verdict may have been predicated on an issue not involved in the subsequent prosecution.

Another illustration of the use of the doctrine is found in those cases which deal with assaults and deaths subsequently resulting therefrom. If an accused is charged with an offense of assault with intent to kill, and is found not guilty, the prosecution is estopped from trying the accused for murder in the event the victim subsequently dies. The rationale of those cases seems to be based on the concept that once the jury finds the defendant did not commit the assault, that holding controls all future actions of the prosecution which bring the same issue into dispute. The doctrine smacks somewhat of a modified theory that a defendant should not be twice tried for the same offense. While admittedly the offenses are, in fact, separate, a conclusive finding in one prosecution on an elemental issue, common to both offenses, bars the prosecution from again trying that same issue. To permit that procedure would allow a second attempt to prove an element crucial to the prosecution's case and which was necessarily adjudicated in the former trial to be non-existent.

The doctrine is not difficult to apply in the illustrated cases, but that is not true when issues interlocutory in nature are involved. In this instance, we find ourselves in that field. However, three Federal decisions throw some illumination on the subject. We have already quoted from United States v. Oppenheimer, supra, wherein the Supreme Court applied the doctrine to a ruling on the barring of an action by the statute of limitations. In the military system that issue can be decided on a motion to dismiss which is ruled on with finality by the law officer. The doctrine has, therefore, been applied by the Supreme Court to issues which are not necessarily involved in the guilt or innocence of the accused.

In United States v. Carlisi, supra, a District Court for the Eastern District of New York, considered the doctrine in connection with a prior court ruling concerning the illegal seizure of certain equipment used in unlawfully distilling spirits. In that case the defendant was first tried on an indictment which charged him with the possession of a still. Upon his first trial, it was decided by the court that the search was illegal, the evidence was suppressed, and a judgment was entered dismissing the indictment. Thereafter, the accused was indicted on a charge of conspiracy to possess the illegal equipment. On the second trial, the United States attorney offered the testimony of the agent who had made the search and seizure. The testimony was excluded upon the ground that the judgment of acquittal rendered upon the merits in the first prosecution, and the decision that the search and seizure was illegal was conclusive on the parties. The court in applying the doctrine quoted from an editorial on the subject, "Res Judicata With Respect to Criminal Judgments," by Harry G. Anderson, Esq., of the New York Bar. The following quotation is extracted from the article as reported:

> " 'The courts have frequently referred to the principle of res judicata in criminal cases. In transplanting the doctrine, however, to criminal law the requirement of mutuality had to be abandoned. A prior adjudication with respect to an element of a subsequently tried offense is not binding upon the accused. This is so because the defendant, charged with crime, always has the right to have the jury or the triers of the facts determine anew every element of guilt. People v. Kief, 126 NY 661, 663 [27 NE 556]; People v. Walker, 198 NY 329, 334 [91 NE 806]. For this rea-

son doubt has been expressed as to whether the doctrine known to the civil law as res judicata is applicable to criminal cases. People v. Rohrs, 49 Hun 150, 151 [1 NYS 672].

" 'In a more precise sense the rule of res judicata as applied in civil law cannot be said to have an exact counterpart in criminal law. There is, however, a rule of estoppel in criminal law akin to res judicata. As thus used it is a "rule of evidence" which accords to the accused the right to claim finality with respect to a fact or group of facts previously determined in his favor upon a previous trial.' "

In United States v. De Angelo, supra, the Circuit Court of Appeals for the Third Circuit adopted the doctrine announced in the Carlisi case. That appeal was taken from a ruling of the trial court in connection with an offer of proof by the defendant. Substantially, he offered to prove that his presence at, and participation in, the robbery had been presented and was material on a previous trial for robbery; that the jury's verdict of acquittal conclusively answered that issue; and that the verdict was adverse to the allegations of the conspiracy indictment, and the testimony offered by the Government in support thereof. The court refused counsel's right so to proceed on his offer of proof, and sustained the Government's objections to the offer. The Circuit Court of Appeals held this to be error and, in support of this ruling, stated:

". . . The conclusiveness of a fact which has been competently adjudicated by a criminal trial is not confined to such matter only as is sufficient to support a plea of double jeopardy. Even though there has been no former acquittal of a particular offense on trial, a prior judgment of acquittal on related matters has been said to be conclusive as to all that the judgment determined. Cf. United States v. Adams, 281 US 202, 205, 50 S Ct 269, 74 L ed 807. The matter is one of collateral estoppel of the prosecutor. Nor can there be any requirement of mutuality with respect to a criminal judg-

ment's conclusiveness. An accused is constitutionally entitled to a trial de novo of the facts alleged and offered in support of each offense charged against him and to a jury's independent finding with respect thereto. But a 'rule of evidence' has been recognized 'which accords to the accused the right to claim finality with respect to a fact or group of facts previously determined in his favor upon a previous trial.' See United States v. Carlisi, DC ED NY, 32 F Supp 479, 482."

If we are not guided by the wording of the Manual, we might be inclined not to extend the doctrine to issues which do not arise out of one transaction or which do not bar a subsequent finding of guilt of another offense. However, the language used by the framers of the Manual is broad and sweeping and covers any issue of fact or law in issue and finally determined; makes no distinction as to issues directly involved or collaterally involved; it does not limit its application to issues arising out of one transaction; and we find no good reason to interpret the provision so narrowly as to require the accused again to litigate an issue which has been decided in his favor. While the fact that the general verdict returned in the military system may, on occasions, make it impossible to determine whether a particular issue was in fact decided in a prior trial, we are not faced with that difficulty in this instance. Here the issue was clearly developed, thoroughly argued, and specifically determined. The facts presented at both trials surrounding the taking of accused's confession were undisputed, and may quickly be summarized. The accused had been advised of his rights under Article 31 of the Code, 50 USC § 602, by Lieutenant Walter G. McBride. Criminal Investigation Division Agent Charles Rhein did not personally advise the accused of his rights under the Article, nor was the warning given in his presence. He, however, conducted the interrogation in the absence of McBride, and the accused executed the

confession in his presence. At the first trial, the law officer held that the agent who obtained the confession must personally advise the accused under the Article or must be present and hear someone else do so. He refused to admit the document because of the absence of the warning required by the Code, and by virtue of his ruling the inculpatory evidence in the confession was excluded. The Government had no substitute evidence available and at the close of its case, a motion for a finding of not guilty was made, the motion was granted by the law officer, and the accused went free.

There are two other principles which should be noticed. We recognize that ▪ res judicata does not apply to an unmixed question of law, United States v. Moser, 266 US 236, 69 L ed 262, 45 S Ct 66 (1924), but here we are confronted with more than that as the law officer has fitted the facts of this case to the law and based his ruling on his belief that the facts established a failure on the part of Government agents to comply with the Code. He concluded that under those circumstances the Article barred the confession. In addition, we mention ▪ the rule that when the defense of res judicata is asserted, it is immaterial whether the issues determined at the first trial were decided rightly or wrongly. United States v. De Maurez, 54 F Supp 102, 105 (DC Ore 1943); United States v. Moser, supra; United States v. Oppenheimer, supra; State v. Hefferman, 41 NM 219, 67 P2d 240 (1937). In this instance the ruling in the first trial was clearly wrong, but the doctrine permits the accused to benefit from an error in his favor.

The board of review considered thoroughly the problem herein involved, and in an exhaustive opinion reached a contrary result. The board stated its reasons, in part, in the following language:

"We are of the opinion that the holding in the *Carlisi* case is a correct application of the doctrine as expressed in the Manual. In that case the two crimes, the illegal possession of the still and the conspiracy to set up the same still and the commencement of the distilling of spirits in violation of law, necessarily arose from the same set of facts. They were but parts of the same overall transaction. That is not true of the case we have before us. In the first place there was no determination at Smith's first trial that the confession was illegally obtained —only that it was *not shown* that it had been legally procured. And secondly, the second trial was for a larceny committed at a different time, having no connection with the larceny involved in the first trial. The two crimes—the larceny of the letters on 29 August 1952 and the larceny of the package on 20 July 1952 —did not arise out of the same subject matter or transaction. The only community of interest is in the taking of the confession, not in the separate commissions of the crimes."

We believe the board erred in its conclusion that there was no holding ▪ to the effect that the confession was illegally obtained. There was a ruling that it was obtained in violation of Article 31, otherwise it would have been admissible. Moreover, we believe the board of review misconstrued the community of interest when it limited the doctrine to the thefts of the letters, i.e., to the same transaction. We interpret the community of interest, and the transaction involved in this case, to be the admissibility of the document and not the substantive offenses. The fact or group of facts concerned the warning given to the accused, and that was common to both cases. Viewed in that light, the accused is accorded the right to claim finality on the ruling. Conceding that the authorities relied on by us deal with separate offenses which arise out of the same transaction, there is no suggestion that the doctrine is limited to that situation. At least we have been unable to find any authority which announces a rule that the principle would not apply when the same issue is relevant to separate transactions. In the Carlisi case, the com-

**375**

munity of interest was the physical evidence; in the Oppenheimer case, it was the statute of limitations; and in this case, it was the confession. These holdings are based on the identity of the subject matter as it affects the ruling and not on the singleness of the criminal transaction.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Army for further action not inconsistent with this opinion.

Chief Judge QUINN concurs.

BROSMAN, Judge (dissenting):

I dissent from the views of the majority.

## II

When the accused here was first tried by court-martial, the law officer ruled that an offered confession was inadmissible. Later, when tried under an entirely distinct charge stemming from a wholly different criminal transaction, the Government sought to make use of the same evidence. The accused countered unsuccessfully with a plea of res judicata. The issue now before us is whether the second court-martial was bound by the ruling of the law officer at the first trial.

This ruling—my brothers say—"was clearly wrong." I quite agree. However, it seems that the basis for this conclusion—both on the majority's part and my own—is that the law officer made an "error of law." If his error related to the facts and their weight, I do not see how we can possibly assert that his ruling was "wrong"—for we are without power to review a law officer's determination of facts relating to interlocutory matters arising during a court-martial trial. Cf. United States v. Josey, 3 USCMA 767, 14 CMR 185; United States v. Wilcher, 4 USCMA 215, 15 CMR 215.

The Manual for Courts-Martial, United States, 1951, in dealing with res judicata, indicates that the doctrine is applicable to issues of "fact or law." Paragraph 71b. This statement the majority accepts, but thereafter contradicts—or at least qualifies—by asserting that "res judicata does not apply to an unmixed question of law, United States v. Moser, 266 US 236, 69 L ed 262, 45 S Ct 66." I believe that we all would agree that it is no easy matter to recognize with assurance an "unmixed question of law." Perhaps the most appropriate approach to determining whether a ruling constitutes one of law solely is to consider, on the one hand, the extent to which it may be generalized in its logic; and, on the other, how much it must be limited by its rationale to the specific parties and the evidence before the court. Law, after all, is normally deemed to consist of more or less generalized and ecumenical guides to conduct.

## III

The majority relates that, at the first trial, "the law officer held that the agent who obtained the confession must personally advise the accused under the Article or must be present and hear someone else do so." Applying the previously mentioned criterion for the determination of what is and what is not a ruling of "law," we may generalize this ruling with ease as follows: One who interrogates a suspect, or an accused, must warn the latter of his right to remain silent, or must hear such a warning given. Now if this is an "unmixed" ruling of law, the majority says that res judicata is out of the picture. However, they conclude that the present ruling—despite its distinct susceptibility to generalization—is not an "unmixed" ruling, and therefore that it created an estoppel which is not limited "to issues directly involved or collaterally involved," nor to "issues arising out of one transaction." Indeed, so far as the majority informs us, there exist literally no limits to the future effect of a law officer's erroneous ruling at an accused person's first trial.

The law officer's ruling here enunciates a principle that—as suggested—is quite general in nature, and in no wise limited in its logic to the particular document which was before the court at the initial trial. In an expansive mood, let us assume that at some future time, the present accused were to commit entirely new offenses, were to be

376

interrogated concerning those crimes, and were to execute a complete confession. However, we will suppose that the interrogation preceding the confession was conducted along lines regarded by the law officer at the first trial as objectionable—that is, that the warning as to rights under Article 31 was given by a person other than him who ultimately received the admission of guilt. Would the introduction of such a confession be barred at any future trial for the new offenses by the doctrine of res judicata? There is nothing in the majority opinion—or, for that matter, in the Manual itself—which suggests that the doctrine would be inapplicable. Yet it is clear that to apply the notion of res judicata within such a context would involve placing the accused under one rule of law concerning Article 31 and his fellow soldiers under an entirely different one. Such a result would indeed signify conflict with that *uniformity* demanded by the Uniform Code of Military Justice—to say the very least. Moreover, it would tend to contravene the precedents of Federal courts in the area of res judicata. See Commissioner v. Sunnen, 333 US 591, 92 L ed 898, 68 S Ct 715; United States v. Stone & Downer Co., 274 US 225, 71 L ed 1013, 47 S Ct 616.

## IV

In light of what has been said, I must conclude that there are at least some limitations on the prospective applicability of the ruling made by the law officer at the first trial—although the majority fails to tell us anything about them. The nature of these limitations I shall seek to deduce from Federal precedents—a technique I feel to be fully justified by the background of the Manual's provision concerning the doctrine of res judicata.

So far as I can tell, a holding concerning the law—or even the application of the law to the facts—is not binding in a subsequent action which involves parallel facts, albeit a "different historical transaction." See, e.g., Developments—Res Judicata, 65 Harv L Rev 818, 843; Restatement, Judgments § 70, Comment (e) (1942); Scott, Collateral Estoppel by Judgment,

56 Harv L Rev 1, 10 (1942); Murphy v. United States, 78 F Supp 236 (SD Cal); Sonken-Galamba Corp. v. Atchison, T. & S. F. Ry. Co., 28 F Supp 456 (WD Mo). Commissioner v. Sunnen, supra, illustrates that a "different historical transaction" may be presented, although a single basic document is involved. In that case the treatment for tax purposes of royalties obtained under a contract made in 1928 had been litigated for the tax years 1929–1931. Subsequent litigation occurred concerning the tax treatment of royalties received during 1937 under the same contract. By that time, however, judicial decisions had made clear that the initial decision was entirely erroneous in its legal premises. The Supreme Court refused to apply res judicata to the second case.

Admittedly the Sunnen case can be distinguished from the instant problem in several respects. However, it does serve to make clear that a party to litigation is not entitled to perpetual advantage from an error of law—even when but a single document and similar evidence are involved. Other Federal cases demonstrate the existence of a judicial intention to avoid giving excessive effect to a ruling which may be little more "than a procedural step in a particular case." Cf. United States v. Wallace & Tiernan Co., 336 US 793, 93 L ed 1042, 69 S Ct 824; The Evergreens v. Nunan, 141 F2d 927 (CA2d Cir), cert den 323 US 720, 89 L ed 579, 65 S Ct 49. As for the Federal cases relied on by the majority, it should be pointed out that the opinion rendered in United States v. Carlisi, 32 F Supp 479 (ED NY), reveals that the application there of res judicata did not involve the perpetuation of an error of law. Moreover, only a single basic transaction seems to have been at stake in the two trials. In United States v. De Angelo, 138 F2d 466 (CA 3d Cir), it was quite clear that res judicata was being applied only in connection with a determination of fact made by a jury at the first trial. There too, incidentally, each hearing involved the same transaction—the accused having been tried in one instance for conspiracy to

**377**

rob and in the other for the robbery itself.

It is widely recognized that what is in essence a single criminal transaction may give rise to the commission of several offenses by an accused. For each such offense he may under the law be separately convicted and punished. United States v. McVey, 4 USCMA 167, 15 CMR 167; United States v. Beene, 4 USCMA 177, 15 CMR 177. And trial for one such offense does not create double jeopardy if he is tried later for another stemming from the same transaction. This circumstance offers the obvious possibility of harassing prosecutions. Thus, it is only just to apply res judicata even as to matters of law which are ruled on during the trial of an accused for another offense stemming from the same criminal transaction. Such protection would be accorded him under my application of res judicata. And such protection is, I believe, all that was intended by the Manual for Courts-Martial—which, on this point I am sure, was following general Federal law.

I genuinely doubt that the draftsmen of the Manual meant to offer the accused a greater immunity—and to estop the Government from relitigating rulings of *law*—when he is later tried for a different offense committed at an entirely different time. The policy against extending this immunity to the present accused seems especially strong for the reason that in the field of criminal law—unlike other areas—mutuality of estoppel *does* not exist; and since—unlike an accused—the Government obtains no opportunity through appeal to obtain correction of flagrant errors of law.

I would affirm the board of review.