UNITED STATES, Appellant

v

JACKIE D. HOOTEN, Yeoman Seaman, U. S.
Navy, Appellee

12 USCMA 339, 30 CMR 339

No. 14,612

Decided April 28, 1961

*Lieutenant Commander Raymond O. Kellam,* USN, argued the cause for Appellant, United States.

*Lieutenant Colonel Remmel H. Dudley,* USMC, argued the cause for Appellee, Accused.

HOMER FERGUSON, Judge:

This is a general court-martial in which the accused was tried for perjury, in violation of Uniform Code of Military Justice, Article 131, 10 USC § 931; conspiracy to commit perjury, in violation of Code, supra, Article 81, 10 USC § 881; and adultery and wrongful cohabitation, both in violation of Code, supra, Article 134, 10 USC § 934. He was found guilty of all charges and specifications and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for twenty-four months, and reduction to the grade of seaman recruit.

The convening authority reduced the period of confinement adjudged to fifteen months, but otherwise approved the sentence. The board of review set aside the findings of guilty of perjury on the basis of *res judicata* and reduced accused's punishment to bad-conduct discharge, forfeiture of all pay and allowances, reduction, and confinement at hard labor for ten months. Thereupon, The Judge Advocate General of the Navy certified the following questions to this Court:

"1. Was the Board of Review correct in holding that the defense of *res judicata* estopped prosecution and conviction of the accused for perjury?

"2. Was the Board of Review correct in holding that the prior acquittal did not prevent the conviction of the accused for conspiring to commit perjury?"

Accused was initially tried by special court-martial on three specifications of larceny by check and ten specifications of wrongfully and dishonorably failing to maintain sufficient funds on deposit to meet certain checks which he made and uttered. At the trial, he defended on the basis of honest mistake and testified that he had given his "wife" one hundred dollars to deposit in the bank prior to writing the checks. After he had negotiated the instruments, he found that she had not deposited the

money. The testimony of the "wife" was also adduced, and she related, under oath, that accused had given her the mentioned sum to deposit in the bank and that she had forgotten to do so. On the basis of this testimony by the accused and the "wife," the members of the special court-martial were instructed on the affirmative defense of mistake of fact and the elements of the offenses charged. They acquitted the accused of each of the check offenses.

Accused's sworn testimony concerning the delivery of the sum to his "wife" constituted the basis for the perjury charge against him, while her testimony concerning the receipt of the money for deposit is alleged as the overt act in the count of conspiracy to commit perjury.

In the record now before us, accused's "wife" testified that she had a living, undivorced spouse, and that she and the accused had never married. She also stated that she had never received the sum of one hundred dollars from the accused to deposit in his bank and that her contrary testimony in this special court-martial was false. The accused had induced her so to testify in order to escape the consequences of the bad-check charges. Also received in evidence was the accused's voluntary pretrial confession in which he acknowledged the falsity of his testimony and that of his "wife" in the special court-martial. In addition, another witness declared that the accused had informed him prior to the special court-martial that he intended to have his "wife" falsely testify that he had given her one hundred dollars to deposit in his checking account.

The accused sought unsuccessfully at the trial to invoke the doctrine of *res judicata* with respect to the charges of perjury and conspiracy to commit perjury. As noted above, he has received part of the relief which he sought through the action of the board of review.

The availability of *res judicata* in military law as a defense to an accused

340

charged with perjury is no longer open to question. United States ▪ v Martin, 8 USCMA 346, 24 CMR 156; United States v Smith, 4 USCMA 369, 15 CMR 369; Manual for Courts-Martial, United States, 1951, paragraph 71*b*.

The Manual, *supra*, discusses the defense as follows, at page 110:

"The defense of *res judicata* is based on the rule that any issue of fact or law put in issue and finally determined by a court of competent jurisdiction cannot be disputed between the same parties in a subsequent trial even if the second trial is for another offense. The accused, in a proper case, may assert an issue of fact finally determined by an acquittal as a defense. Thus, if B has been acquitted by a court-martial . . . of having committed an assault with a knife upon A, B can assert the acquittal as a defense if, upon the subsequent death of A as a result of the wound inflicted in the assault, B is later tried for murder, although the defense of former jeopardy might not be available to him. . . ."

In United States v Smith, *supra*, we had occasion exhaustively to consider the doctrine as a defense and concluded that the discussion contained in the Manual, *supra*, correctly reflected military law. Judge Latimer there noted on behalf of the Court, at page 374:

". . . [T]he language used by the framers of the Manual is broad and sweeping and covers any issue of fact or law in issue and finally determined; makes no distinction as to issues directly involved or collaterally involved; it does not limit its application to issues arising out of one transaction; and we find no good reason to interpret the provision so narrowly as to require the accused again to litigate an issue which has been decided in his favor."

In *Smith, supra*, we were concerned with the binding effect of a law officer's action in excluding the accused's confession from evidence as involuntary in an earlier trial. In United States v

Martin, *supra*, however, we were faced with application of the doctrine of *res judicata* to the trial of an accused for perjury based upon allegedly false testimony given at his trial for another offense of which he was acquitted. There, we pointed out that we had previously considered the diametrically opposed views of other jurisdictions concerning the use of *res judicata* as a defense in criminal proceedings and reaffirmed our holding in United States v Smith, *supra*, that it was available to military accused. We then specifically rejected the contention that the doctrine did not apply to charges of perjury based upon accused's testimony in a former trial. United States v Martin, *supra*, at page 350. At the same time, we noted the difficulty involved in determining the nature of the factual questions litigated at the original proceedings. Thus, we said, at page 349:

"We recognize there is merit to the argument that a general finding by a court-martial ofttimes makes it difficult to determine whether a particular issue was in fact decided in a prior case. However, in this instance the claimed difficulty is more imaginary than real. In United States v Sealfon, 332 US 575, 92 L ed 180, 68 S Ct 237, the Supreme Court of the United States not only applied the doctrine of res judicata in a criminal case, it went on to say that a determination of whether an acquittal in a prior trial embraces a given issue *'depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial.'* " [Emphasis supplied.]

The foregoing authorities settle the law to be applied with respect to accused's trial for perjury following his acquittal of the bad check charges. Turning to the record before us, the problem "is to decipher exactly what facts have been, or should be deemed to have been, determined by the jury that acquitted him." Adams v United States, 29 LW 2427 (CA 5th Cir) (March 7, 1961). Here, as in United States v Martin, *supra*, we are confronted with no real difficulty. At the original trial, the parties stipulated that

341

the accused had written the checks in question and had received certain items in return therefor. Indeed, the Government's brief concedes that the issue at the trial "therefore narrowed down to the accused's culpability, i. e., of his wrongfulness and dishonor in failing to maintain sufficient funds in the drawee banks." Compare Wheatley v United States, 286 F2d 519 (CA 10th Cir) (1961). The accused and his "wife" thereafter testified concerning the alleged arrangement for deposit of one hundred dollars prior to the uttering of the checks. It also appears that the court-martial was instructed on the issue of mistake of fact to which such evidence gave rise. The Government nonetheless urges that the testimony did not necessarily cause the acquittal and, therefore, cannot bar accused's subsequent trial for perjury, although it may be, as found by the board, the most reasonable explanation for the failure to find accused guilty. We believe this argument attributes too narrow a scope to the defense of *res judicata* and to our holdings in United States v Smith and United States v Martin, both supra.

Scrutiny of the record of the former trial leads inevitably to the conclusion that, under the facts and instructions applicable to that hearing, accused's acquittal resulted from his testimony and that of his "wife" concerning the deposit of one hundred dollars to his account. Thus, the trial of the perjury charge based upon such testimony by the accused is a "flat contradiction of the prior acquittal." United States v Martin, supra, at page 349; Ehrlich v United States, 145 F2d 693 (CA 5th Cir) (1944). Reaching this result, however, does not mean that, in order to invoke the doctrine of *res judicata,* the defense must exclude every other possible reason for his acquittal. So to narrow the scope of the defense would be to lay upon the accused an impossible burden. Rather, as we indicated in United States v Martin, supra, at page 349, the question to be decided is whether, under the evidence and instructions at the first trial, a fair evaluation of human behavior compels the

conclusion that the acquittal resulted from the matter again placed in issue at the second trial. There is little difference between this concept and finding, as did the board of review, that the most reasonable basis for the acquittal was involved in the story told by the accused and his "wife."

Accordingly, we find that the issue concerning the accused's transfer of one hundred dollars to his "wife" for deposit in the appropriate bank was finally settled between him and the Government by the verdict of not guilty reached in his first trial. United States v Martin, supra; United States v Smith, supra. The defense of *res judicata,* therefore, barred his conviction of perjury based upon that testimony, and the board of review acted properly in setting aside the findings of guilty with respect to that offense. Thus, the first certified question must be answered in the affirmative.

Much of what has been stated with respect to the charge of perjury and the defense of *res judicata* is equally applicable to the charge of conspiracy to commit perjury. The specification setting forth this crime alleges a single overt act, consisting of the "wife's" false testimony in the special court-martial that she had received the sum of one hundred dollars from the accused for deposit in the bank. As noted above, the issue concerning the receipt for deposit of this money had already been concluded between the accused and the Government by his acquittal in the special court-martial proceedings. United States v Martin, supra; United States v Smith, supra. Accordingly, unless some valid distinction can be drawn because of the nature of the charge, it would appear that the accused is also entitled to the benefit of the doctrine of *res judicata* in this instance.

At the outset, it is clear that the Government was required in the trial to allege and establish the existence, not only of a corrupt agreement to commit perjury between the accused and his "wife," but also of an overt act designed to further the ends of the conspiracy. Code, supra, Article 81, 10 USC § 881;

Manual, supra, paragraph 160; United States v Mallow, 7 USCMA 116, 21 CMR 242; United States v Choat, 7 USCMA 187, 21 CMR 313. That act, as stated and proved, is the "wife's" false testimony that she received the sum of one hundred dollars from her "husband." Proof of this act again flatly contradicts the verdict in the former trial.

A similar situation arose in Yawn v United States, 244 F2d 235 (CA 5th Cir) (1957). There, the accused had been acquitted upon an indictment charging joint possession of an unregistered distillery. He was subsequently indicted for conspiracy to violate the Internal Revenue Code, and one of the overt acts set forth in the indictment was the joint possession of the distillery involved in the earlier trial. The Circuit Court of Appeals reversed on the basis that the doctrine of res judicata forbade the Government to rely upon that overt act. In taking such action, it was stated, at page 237:

"In the present case the Government had, and has, every right to establish the guilt of the accused of the separate offense of conspiracy to violate the liquor tax laws despite the acquittal of unlawful possession of the still. Pinkerton v United States, 328 US 640, 66 S Ct 1180, 90 L ed 1489. But to allow the Government to have a second opportunity to establish the precise fact of possession decided by another Court of competent jurisdiction in favor of the accused is to ignore the rule that '* * the same facts can not be twice litigated by the same sovereign against the same defendant.' Serio v United States, 5 Cir, 203 F2d 576, at page 578, certiorari denied 346 US 887, 74 S Ct 144, 98 L ed 391. We hold that the Government was precluded as a matter of law under these circumstances for making such an attempt."

See also Sealfon v United States, 332 US 575, 92 L ed 180, 68 S Ct 237 (1948); United States v De Angelo, 138 F2d 466 (CA 3d Cir) (1943); United States v Meyerson, 24 F2d 855 (SD NY) (1928); and Cosgrove v United States, 224 F2d 146 (CA 9th Cir) (1955).

The language which we used in United States v Smith, supra, anticipated a similar holding by this Court. There, Judge Latimer said on behalf of the majority, at page 372:

". . . Ilustrative of the principle [of res judicata] are cases which involve the prosecution for a substantive offense based on a particular overt act and a conspiracy based on the same act. If the verdict finally determined that the defendant did not commit the overt act, the finding was binding on the prosecution in a suit involving a conspiracy."

From the foregoing, it will be seen that no special consideration is attached to the change of the charge against the accused to conspiracy when the Government attempts to relitigate the same issue involved in accused's earlier trial, albeit on the basis that it constituted only an overt act. Yawn v United States, supra; United States v Smith, supra. Rather, the policy of the law is as inexorably applied here as elsewhere, and the Government is not entitled, under that guise, to try again the question whether the "wife" actually received the money from the accused. There must be an end to litigation, and its termination in criminal cases is commanded by the proper invocation of the doctrine of res judicata. That principle clearly applies to the charge of conspiracy to commit perjury when the overt act alleged involves a matter previously determined against the Government. Accordingly, this charge must also be set aside.

The first certified question is answered in the affirmative. The second certified question is answered in the negative. The findings of guilty with respect to the charge of conspiracy to commit perjury are set aside. The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. The board may reassess the sentence on the basis of the remaining findings of guilty or order a rehearing thereon.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

I do not necessarily disagree with the disposition ordered by my associates, but there is an undeveloped area which, when explored, better presents my views. Before discussing them, I mention the fact that if the statement upon which the perjury offense was predicated was broken into its several parts, a conviction might be affirmed on the theory that the special court-martial did not decide the collateral matter of the marital status. That theory is not discussed because under the law officer's instructions the complete statement was treated as a unit and the charge was given with that view in mind.

Generally speaking, these ten check offenses can be divided into two groups. Seven instruments were drawn on a bank in Missouri and three on a bank in Beeville, Texas. A finding of not guilty on the former could have been predicated on testimony other than that which is alleged to be false and, as a matter of fact, it had to be, for the testimony that the wife was to deposit $100.00 in the Beeville bank raised no issue as to them.

A different proposition is presented by the three other checks. In connection with those, there were six specifications with each check being the base for a charge of larceny under Article 121, Uniform Code of Military Justice, 10 USC § 921, and a dishonorable failure to place money on deposit to pay the instrument upon its presentment, in violation of the General Article, 10 USC § 934. Accordingly, we must look to those six offenses to determine the issue.

In United States v Martin, 8 USCMA 346, 24 CMR 156, I stated, "a defendant's prior acquittal precludes his subsequent prosecution for perjury committed at the former trial, if a flat contradiction of the prior acquittal is involved in the subsequent prosecution." I stand by that statement and use it as my measuring rod in this case.

As to the dishonorable failure to maintain a balance offenses, in the special court-martial proceeding the president defined the word dishonorably in the following language:

". . . The term 'dishonorably', as used in the specifications refers to conduct that is characterized by fraud, deceit, dishonesty, evasion, or false or fraudulent promises."

Here, as with the seven other check specifications, I do not believe the findings are necessarily supported by the testimony concerning the deposit. While the special court-martial record is scanty, there is evidence of careless handling of money matters, immediate efforts to make restitution, and other bits of testimony which could form the base for a holding that accused's method of operation was not dishonorable.

It is in connection with the larceny charges that I find a flat contradiction. The accused admitted writing the checks, obtaining merchandise or money therefor, and having no account in the bank. Every element of larceny or its included offense of wrongful appropriation which was included in the charge of the president of the court-martial was admitted excepting the intent to deprive. Surely, unless the court-martial believed the testimony of the accused and his corroborating witness that she was to deposit money in the bank, the members could not conclude he did not intend to deprive the victims of their property, either permanently or temporarily. There just is no other peg upon which the court could hang its verdict of innocence. Accordingly, I say for a second court-martial to find accused's story to be false impeaches the earlier judicial determination that it was true.

Insofar as the conspiracy offense is concerned, I, too, believe that it is barred. Where I part company with the board of review is that it makes the illegality of the overt act the determining factor. True it is that each successive step in carrying out a conspiracy need only be manifestations that the conspiracy is at work, but the point overlooked is that the agreement must be to commit an unlawful act or ac-

344

complish an unlawful purpose. Here the accused is charged with conspiring with Mrs. R. to commit perjury, and that is where the bar is erected. The previous court found the testimony to be true, and the Government is bound by that finding. Surely an agreement to testify to the truth is lawful, and a finding by the second court-martial that it is unlawful of necessity flatly contradicts the earlier finding.

For the foregoing reasons, I concur with my brothers.