UNITED STATES, Appellee

v

CHARLES L. DOUGHTY, Specialist Four, U. S. Army, Appellant

14 USCMA 540, 34 CMR 320

No. 17,309

May 8, 1964

*First Lieutenant Clifford B. Hearn, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk, Captain Daniel H. Benson,* and *Captain Gary G. Keltner.*

*First Lieutenant Barrie G. Sullivan, II,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened by the Commanding General, 4th Logistical Command, at Poitiers, France, on May 8, 1963, the accused was found guilty of subornation of perjury and obstructing justice, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction to the lowest enlisted pay grade. The convening authority reduced the term of confinement involved to nine months but otherwise approved the sentence. The board of review affirmed, and we granted accused's petition for review upon two issues dealing generally with the application of the doctrine of *res judicata* to his trial. Each will hereinafter be set forth and separately discussed.

I

From the record, it appears that the accused was observed by a military police patrol, on the evening of October 27, 1962, while driving his privately owned vehicle in an erratic manner. The patrol gave chase, found the car parked in front of accused's barracks, and, within a few minutes, apprehended Doughty near its front entrance. He was tried by special court-martial on November 30, 1962,

upon charges of drunken driving and operating his automobile in violation of an order to the contrary issued by his commanding officer. Both these charges were based on the incident observed by the military police on October 27.

At his trial, the accused adduced the testimony of Private John L. Boyd in his defense. In essence, Boyd declared it was he, not the accused, who was driving Doughty's vehicle at the time during which the police observed its operation. Despite this testimony, accused was found guilty of operating the automobile in violation of his commanding officer's order. He was, however, acquitted of drunken driving.

On May 6, 1963, Private Boyd was tried by general court-martial upon a charge of perjury, it being alleged that he had, contrary to his oath, testified falsely in accused's trial. Boyd was found not guilty.

On May 8, 1963, accused was brought to trial for suborning Boyd to commit perjury in his special court-martial by testifying that he, in fact, drove accused's vehicle at the time and on the date in question. Boyd appeared as a witness in this trial, and, despite his own acquittal, acknowledged that he had perjured himself upon Doughty's solicitation and in return for a payment of $50.00. Other testimony, including that of the military policemen,

was offered to corroborate Boyd's exposé of the situation and to satisfy the quantitative requirements of proof.

## II

At the trial, accused's counsel urged that Private Boyd's acquittal of perjury barred Doughty's conviction for subornation of such false testimony. The law officer denied accused relief in this respect, and it is with the accuracy of this ruling that the assigned error upon which we granted accused's petition is concerned. In addition, however, we directed that the issue whether accused's own acquittal of drunken driving barred his subsequent trial for subornation be also briefed and argued. It is to this point that we first direct our attention, for it will serve admirably to bring into focus some of the basic concepts underlying the defense of *res judicata* which we deem applicable here.

That the principle of *res judicata*, by which a fact or matter put into issue and directly determined by ▮ a court of competent jurisdiction cannot afterwards be disputed between the same parties, is applicable to judgments in criminal prosecutions is not open to question. In United States v Oppenheimer, 242 US 85, 61 L ed 161, 37 S Ct 68 (1916), Mr. Justice Holmes, for a unanimous Court, declared, at page 87:

"Upon the merits the proposition of the Government is that the doctrine of *res judicata* does not exist for criminal cases except in the modified form of the Fifth Amendment that a person shall not be subject for the same offence to be twice put in jeopardy of life or limb. . . . It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. . . .

". . . We may adopt in its application to this case the statement of a judge of great experience in the criminal law: 'Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, the adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offence. . . . In this respect the criminal law is in unison with that which prevails in civil proceedings.' Hawkins, J., in The Queen v Miles, L.R. 24 Q.B.D. 423, 431."

And in Sealfon v United States, 332 US 575, 92 L ed 180, 68 S Ct 237 (1948), the same Court reaffirmed the application of the principle to the criminal law:

"It has long been recognized that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. Pinkerton v United States, 328 US 640, 643, 66 S Ct 1180, 1182, 90 L ed 1489. Thus, with some exceptions, one may be prosecuted for both crimes. *Ibid.* But *res judicata* may be a defense in a second prosecution. That doctrine applies to criminal as well as civil proceedings. . . . [citing cases] and operates to conclude those matters in issue which the verdict determined though the offenses be different."

See also Frank v Mangum, 237 US 309, 59 L ed 969, 35 S Ct 582 (1915), and Annotation, 147 ALR 991.

Military law likewise has adopted the defense of *res judicata* and permitted it to be pleaded in bar of conviction upon a second trial involving the same facts. United States v Smith, 4 USCMA 369, 15 CMR 369; United States v Martin, 8 USCMA 346, 24 CMR 156; United States v Hooten, 12 USCMA 339, 30 CMR 339; Manual for Courts-Martial, United States, 1951, paragraph 71b. In United States v Smith, supra, at page 374, Judge Latimer, speaking for the Court and approving the statement of the doctrine in the Manual, supra, declared:

". . . [T]he language used by the framers of the Manual is broad

**543**

and sweeping and covers any issue of fact or law in issue and finally determined; makes no distinction as to issues directly involved or collaterally involved; it does not limit its application to issues arising out of one transaction; and we find no good reason to interpret the provision so narrowly as to require the accused again to litigate an issue which has been decided in his favor."

And in United States v Hooten, supra, at page 340, we stated:

"The availability of *res judicata* in military law as a defense to an accused charged with perjury is no longer open to question."

The application of the doctrine of *res judicata* requires a twofold determination, *i.e.*, the identity of the parties involved in the former judicial proceedings and the nature of the issues which were there settled. With respect to accused's original trial for drunken driving and disobedience, the identity of the parties is not in question, for Doughty was the defendant in both instances and the Government, of course, is always the plaintiff in military criminal proceedings. Insofar as this issue is concerned, therefore, we need only inquire whether accused's former acquittal of drunken driving operated to prohibit the United States from thereafter litigating the issue of Boyd's testifying falsely in stating to the special court-martial that he, not the accused, was driving the automobile on the occasion in question.

Subornation of perjury, in violation of Code, supra, Article 134, requires proof that the suborned witness actually committed perjury, as alleged, in a trial or other judicial proceeding. Hammer v United States, 271 US 620, 70 L ed 1118, 46 S Ct 603 (1926); Petite v United States, 262 F2d 788 (CA 4th Cir) (1959); Segal v United States, 246 F2d 814 (CA 8th Cir) (1957); Meyers v United States, 171 F2d 800 (CA DC Cir) (1948). As was noted in the last mentioned case, at page 803:

" . . . It is elementary that one cannot be convicted of suborning a perjury which was not in fact committed; that is to say, there can be no subornation of perjury if there was no perjury. It is equally true that one cannot be convicted of suborning perjury if the alleged perjurious statement actually was not made by the alleged perjuror."

Thus, as an element of accused's alleged subornation of Boyd, it was incumbent upon the United States to establish in this case that Boyd lied under oath in the special court-martial when he stated that he drove accused's car on the evening in question. If such be a flat contradiction of the special court-martial's verdict that the accused was not guilty of drunken driving, then Doughty's conviction of subornation is barred by the doctrine of *res judicata,* the issue whether Boyd was the driver rather than the accused being finally settled by the earlier court's verdict. United States v Hooten, United States v Martin, United States v Smith, all supra. Under the circumstances of this case, however, there is no such contradiction between the findings of the special court-martial and accused's present prosecution.

As the record before us clearly demonstrates, accused's trial by special court-martial involved two offenses, *i.e.*, drunken driving and driving his privately owned vehicle in violation of his commanding officer's orders not to do so for a specified period.[1] Both allegations against him referred to the operation of the vehicle on the specific occasion on which Boyd originally testified that he was the driver. While the accused was acquitted of drunken

---

[1] The exact nature and scope of the commander's order is not shown on this record and is, of course, not germane to our inquiry. We need not, therefore, examine into the question of its legality. Cf. United States v Wilson, 12 USCMA 165, 30 CMR 165; United States v Wheeler, 12 USCMA 387, 30 CMR 387.

driving, he was nevertheless convicted of disobeying his commanding officer's order by driving his car at the time and place in question. Hence, it is fairly obvious that the court-martial, whatever its reasoning may have been, did not acquit accused of drunken driving on the basis of Boyd's exculpatory testimony but, in fact, found that the accused was driving the vehicle. This being the case, there is no contradiction between the verdicts, and accused's conviction of subornation of perjury is not barred by reason of the findings in his earlier special court-martial. United States v Martin, supra; Sealfon v United States, supra.

### III

The second invocation of the doctrine of *res judicata* urged upon us by the accused is the proposition that his conviction of subornation of perjury is barred by Boyd's earlier acquittal of perjury for the testimony which he offered in Doughty's special court-martial. As proof of such perjury is essential to the establishment of the accused's guilt, there is indeed a flat contradiction between the finding by one court-martial that Boyd was innocent of such misconduct and relitigation by the Government before another fact-finding tribunal of the identical issue. United States v Hooten, supra. The Government urges, however, that it is estopped to deny the finding of Boyd's court-martial only as to Boyd, asserting that the defense of *res judicata* applies only between the same parties. In support of this result, it relies on our former decisions in *Hooten, Martin,* and *Smith,* all supra, in which the Court used that phrase in discussing the principle involved. In reply, appellate defense counsel point to our decisions in United States v Nathan, 12 USCMA 398, 30 CMR 398, and United States v Kidd, 13 USCMA 184, 32 CMR 184, and argue that mutuality of parties is not always essential to invocation of the defense.

In United States v Nathan, supra, the accused was convicted of conspiracy, after his co-conspirators had earlier been acquitted of the same charge. At his trial, the acquitted parties appeared and testified that they were accused's partners in the illegal combination alleged against him. The Government, relying upon Platt v State, 143 Neb 131, 8 NW2d 849 (1943), argued that the earlier acquittal of the alleged co-conspirators should not affect the verdict against Nathan in a separate proceeding. Of this, we said, at page 399:

" . . . Essentially, the argument and the decision in the *Platt* case are to the effect that inconsistency in a verdict is not fatal to a conviction, and that judgment of acquittal in the trial of one conspirator is not *res judicata* as to the other alleged conspirator because the defendants are not the same. Carrying the argument to its logical conclusion brings us to the situation in this case. In an earlier trial, both of the accused's alleged co-conspirators were judicially determined not to be a part of the purported conspiracy. Despite their acquittal, however, they appeared at the accused's trial as Government witnesses and testified, contrary to the verdict at their trial, that they were partners in the illegal agreement. Is such a collateral attack on the verdict permissible? Can the Government and its witnesses deny the truth and the validity of what has been judicially determined in the prosecution to which they were parties? In our opinion, they cannot.

"As long as the verdict in the trial of the alleged co-conspirators stands, it must exclude those persons from the conspiracy. This means that, in fact and in law, the accused cannot be tried for conspiracy unless there are persons, other than those acquitted of the charge, who joined in the agreement with him. The situation as to conspiracy is different from that of inconsistent verdicts based on the same evidence as to two or more defendants charged with the commission of a substantive offense. In the latter instance, each defendant stands alone; hence, the acquittal of one does not preclude conviction of the other. In a conspiracy prosecution, it must be

**545**

shown that at least two persons joined together in an illegal agreement. A judicial determination against the Government, whether in the same or in a separate action, that alleged co-conspirators are not part of the illegal agreement, eliminates those persons from partnership with the accused. If no other persons, known or unknown, are alleged to have conspired with the accused, the essential fact of agreement is missing and the accused cannot be convicted of conspiracy."

In United States v Kidd, supra, the Court, speaking through Judge Kilday, reiterated its holding in the *Nathan* case and applied it unexceptionally to a situation involving the acquittal of Kidd's co-actor following his own trial. Chief Judge Quinn, the author of *Nathan,* supra, concurring in United States v Kidd, supra, emphasized that the basic principle for the rule in conspiracy cases lay in "application of the doctrine of collateral or unilateral estoppel which is part of the larger principle of *res judicata.*" *Kidd,* supra, at page 192. He went on to declare that, while estoppel is generally based upon a prior adjudication, the later acquittal of accused's co-conspirator amounted to new evidence which would have justified the granting of a petition for new trial. However, as such acquittal had been considered by the convening authority and there was no doubt that it had occurred, the substance of the issue should be considered and, as such, undoubtedly entitled the accused to dismissal of the conspiracy charge. United States v Kidd, supra, at page 193. As this opinion makes crystal clear, the essence of the prohibition against conviction of a single conspirator following the acquittal of all other parties to the alleged criminal agreement lies in the doctrine of *res judicata.*

Thus, the United States is in error when it assigns a narrow and restricted meaning to the ▮▮▮▮ ▮ phrase "same parties," as we used it in our decisions directly applying the defense of *res judicata.* This, indeed, is the ordinary situation and is that involved in each of those cases in which, from the facts, it was apparent that only the particular accused and the Government were the parties to any of the criminal proceedings adjudicating the issues in point. But, as indicated in the Court's opinion in United States v Nathan, supra, and perhaps most clearly in the Chief Judge's concurring opinion in United States v Kidd, supra, when the crime involved is one impossible of sole commission but requires concurrence of intent or action between two or more parties, adjudication of issues in a trial of one of those essential parties may be pleaded in defense by another who was not joined in the first proceeding. Under such circumstances, in view of the nature of the offense, mutuality embraces those co-actors essential to a finding that the crime has been committed. In short, there is then a relationship between the defendants which permits one to avail himself of an adjudication favoring the other as against the United States.

Surely, there is nothing revolutionary or startling in the concept that privity between individuals may entitle both to the protection of the principle of which we speak. Thus, in Cromwell v Sac County, 94 US 351, 24 L ed 195 (1877), Mr. Justice Field noted that, in such instances, a judgment upon the issues "is a finality as to the claim or demand in controversy, concluding parties *and those in privity with them.*" (Emphasis supplied.) So also in Commissioner v Sunnen, 333 US 591, 92 L ed 898, 68 S Ct 715 (1948), the Supreme Court declared, at page 597:

"It is first necessary to understand something of the recognized meaning and scope of *res judicata,* a doctrine judicial in origin. The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, *the parties to the suit and their privies*

*are thereafter bound. . . ."* [Emphasis supplied.]

That subornation of perjury is an offense which requires two parties in order to complete its com‐ █ mission cannot be denied. There must be a sub‐ orner, and there must be a perjurer, for, as we have already noted, there can be no subornation without the actual commission of perjury. Meyers v United States, supra. And, as indicated by the nature of the offense and the facts in this record, what was involved here was a criminal agreement for Boyd to perjure himself at the instance of Doughty in return for a payment of $50.00. This relationship between the parties has been described by the Supreme Court as follows:

" . . . One who induces another to commit perjury is guilty of subornation . . . and . . . is also guilty of perjury. In substance subornation is the same as perjury. And one accused of perjury and another accused of subornation may be indicted and tried together." [Hammer v United States, supra, at page 628.]

Under the circumstances, therefore, it seems clear that the parties to the offense are so necessarily involved each with the other in its commission that sufficient privity exists on the part of the suborner to claim benefit of the defense of *res judicata* by reason of the acquittal of the perjurer. In this respect, the situation is not substantially different from that before us in United States v Nathan and United States v Kidd, both supra. Contrary to the Government's asser‐ █ tion, the principle applied in those cases was not limited to charges of conspiracy and, while we need not now fully develop its scope, we are certain it is equally applicable to other offenses in which privity exists because of the fact that guilt on the part of each defendant was necessary in order to commit the crime charged. As the Supreme Court noted in United States v Oppenheimer, supra, at page 87, regarding the doctrine of *res judicata*, " 'the criminal law is in unison with that which prevails in civil proceedings.' " And that it extends beyond the identical parties involved in the original proceedings is not, on the civil side, open to doubt. Concurring opinion of Chief Judge Quinn, United States v Kidd, supra; Commissioner v Sunnen, supra; Cromwell v Sac County, supra; Fleischer v A. A. P., Inc., 222 F Supp 40 (SD NY) (1963); First Congregational Ch. v Evangelical & Reformed Ch., 305 F2d 724 (CA 2d Cir) (1962); Civoru v National Broadcasting Company, 261 F2d 716 (CA 2d Cir) (1958).

Having reached this conclusion, we likewise reject the argument that the case before us is governed by our decision in United States v Marsh, 13 USCMA 252, 32 CMR 252, wherein it was held that the conviction of an accessory to larceny was not barred by acquittal of the actual thief. As we attempted to make clear in that case, such a result followed from the enactment by Congress of Code, supra, Article 78, 10 USC § 878, which provided for the separate, statutory punishment of accessories, "without regard to the separate conviction or acquittal of the principal offender." United States v Marsh, supra, at page 258. In such instance, the doctrine of *res judicata* is in no way involved, the matter being governed entirely by the intent of the legislature in enacting the Code. Such, however, is obviously not the case with reference to the situation here presented. See Maybush v Commonwealth, 29 Gratt 857, 70 Va Rep Ann 626 (1878).

In sum, then, we conclude that the law officer should have allowed accused's plea of *res judicata* on the basis of Boyd's acquittal of perjury, for the United States was bound by the verdict in that case not further to litigate the same matter. The findings of guilty of subornation cannot, therefore, stand.

The findings of guilty of specification 1 of the Charge are set aside and ordered dismissed. The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Army. The board of review may reassess the

**547**

sentence upon the basis of the remaining findings of guilty.

Chief Judge QUINN concurs.

KILDAY, Judge (dissenting):

Though seldom encountered in the reports, the doctrine of *res judicata*, applicable in civil cases, is recognized by the Federal courts in criminal cases. United States v Oppenheimer, 242 US 85, 61 L ed 161, 37 S Ct 68 (1916); Sealfon v United States, 332 US 575, 92 L ed 180, 68 S Ct 237 (1948).

Paragraph 71b, Manual for Courts-Martial, United States, 1951, recognizes that doctrine as applicable in military law. Whether this be true because the President has included the paragraph in the Manual as a rule of procedure or mode of proof, or because of the existence of the doctrine in Federal criminal law, need not concern us, for the Manual rule is in strict conformity with the Federal rule as enunciated in *Oppenheimer* and *Sealfon,* supra.[1]

I hesitate to take issue with the well considered majority opinion in this case. However, I must confess to a serious doubt as to the application of the doctrine of *res judicata* under the facts of the case at bar. The Manual provision is limited so that the earlier determination "cannot be disputed *between the same parties* in a subsequent trial." (Emphasis supplied.) I know of no Federal criminal case which applies the doctrine of *res judicata* in which the parties are not identical.

I have no doubt but that Cromwell v Sac County, 94 US 351, 24 L ed 195 (1877), cited in the majority opinion, is correct in stating that, in a civil case, *res judicata* concludes parties and those in privity with them. However, I am doubtful as to what may be envisaged as "privity" in criminal actions. Until the presentation of some authority as to the existence and nature of "privity" in criminal cases, I am forced to regard the majority opinion as an unwarranted extension of the doctrine of *res judicata* to cases in which the parties are not the same. Therefore, I disassociate myself from such holding and am forced to dissent.

I would affirm the decision of the board of review.

---

[1] See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 89; United States v Lawton, 28 BR (ETO) 293. See also United States v Smith, 4 USCMA 369, 15 CMR 369; United States v Martin, 8 USCMA 346, 24 CMR 156; United States v Hooten, 12 USCMA 339, 30 CMR 339. And see Annotation: Doctrine of res judicata in criminal cases, 147 ALR 991.