UNITED STATES

v.

Airman Jabez L. NOBLE, FR 400–84–4426, 301st Transportation Squadron, Eighth Air Force (SAC).

ACM S24398.

U. S. Air Force Court of Military Review.

Sentence Adjudged 27 April 1976.

Decided 21 Sept. 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before BUEHLER, HERMAN and ORSER, Appellate Military Judges.

## DECISION

HERMAN, Judge:

Before a special court-martial consisting of members, and charged with resisting apprehension, escape from custody, willfully damaging personal property, three assaults (two upon security police in the execution of their duties), and drunk and disorderly in station, in violation of Articles 95, 109, 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 895, 909, 928, 934, the accused pleaded not guilty to all specifications and charges except the willful damage to per-

sonal property. He was found guilty of all charges and specifications, but upon review by the officer exercising general court-martial jurisdiction, the findings of guilty of escape from custody, one assault (upon his wife), and drunk and disorderly were disapproved. The sentence was reduced by eliminating that portion which adjudged two months confinement at hard labor and detention of pay of $250.00 per month for two months, leaving, as the approved sentence, a bad conduct discharge.

The accused, in his request for appellate defense counsel, has alleged an error in the admission into evidence of a previous Article 15, Code, supra, punishment which we find adequately discussed in the post-trial review of the staff judge advocate and correctly resolved against the accused. Appellate defense counsel assert, as their first assignment of error, that

> THE EVIDENCE IS INSUFFICIENT TO PROVE THE OFFENSE OF RESISTING APPREHENSION AS ALLEGED IN SPECIFICATION 1 OF CHARGE I.

The accused and his wife were estranged, having lived apart for the three weeks preceding this series of incidents.[1] In the early evening of 31 March 1976, the accused cut several hoses under the hood of his wife's car and tore off the radio antenna (the charge under Article 109, Code, supra). Later that evening, after he had consumed a substantial amount of wine, he attempted to see her at a barracks she was visiting. Anticipating some trouble, since the accused had assaulted her previously, his wife called the security police. In response, Sergeant Belcher arrived shortly thereafter, in recognizable security police uniform and the accused reluctantly obeyed his direction to sit down. While Sergeant Belcher was conversing with Mrs. Noble, the accused appeared to lunge or run at her. The ensuing events were described by Sergeant Belcher in these words:

Q. What happened at that point?

A. . . . Airman Noble was making his way in the direction of Mrs. Noble. At that time, I went to assist the lady who was holding him and Airman Noble pushed her against the wall, and I grabbed Airman Noble and the fight ensued after that.

Q. Who was the fight between?

A. Airman Noble and myself.

Q. About how long did that last?

A. I am not sure. I would estimate approximately 10 minutes.

. . . . .

Q. At the time that you restrained Airman Noble, did you say anything to him?

A. Yes, sir, I was pleading with him to calm down, but I don't remember what I did say.

Q. At any point during your struggle did you decide to apprehend Airman Noble?

A. Yes sir, I did.

Q. And when you decided to apprehend him, what did you attempt to do?

A. I attempted to place him in handcuffs.

Q. Were you successful?

A. No sir, I wasn't.

Q. Did you ever receive any assistance in your struggle?

A. Yes sir, I did finally.

Q. And who assisted you?

A. We had several Security Policemen respond—Airman Petty, Sergeant Malinski, Airman Ecker, and Lieutenant Hutchinson. I believe Airman Noble's commander was there later too.

Q. Did it take all of you to restrain Airman Noble?

A. Yes sir, it did.

Q. Did you ever say to Airman Noble, "You are under arrest?"

A. I don't recall ever saying that, sir.

Q. Did you ever say, "You are under apprehension?"

A. Not to my knowledge, sir.

Q. But you did attempt to put handcuffs on him?

---

1. All offenses charged took place on the same day, 31 March 1976.

A. Yes sir, I did.

Sergeant Belcher described the accused during this period of time as intoxicated, hostile, violent, upset and uncontrollable. During the course of the fight, the accused bit Sergeant Belcher on his left thumb, leaving a dime-sized scar, and scratched his face.

Another witness described essentially the same incident, adding that when Sergeant Belcher was unable to restrain the accused, another security policeman came to his assistance and also attempted to handcuff the accused, unsuccessfully. Finally, it required four persons to restrain the accused so that one of them could place the handcuffs on him.

■ An apprehension is effected by clearly notifying the person to be apprehended that he is thereby taken into custody. The order of apprehension may be either oral or written. Manual for Courts-Martial, 1969 (Rev.), paragraph 19c. However, the circumstances of the apprehension or arrest may provide the requisite notice, if oral or written advice is not given:[2]

If the totality of facts reasonably indicate that both the accused and those possessing the power to apprehend are aware that the accused's personal liberty has been restrained, even in the absence of verbalization, an apprehension is complete.

United States v. Fleener, 21 U.S.C.M.A. 174, 44 C.M.R. 228 (1972).[3] See also United States v. Lopez-Santiago, 32 C.M.R. 802 (A.F.B.R. 1962), pet. denied, 13 U.S.C.M.A. 698, 32 C.M.R. 472 (1962).

■ The offense of resisting apprehension consists of a lawful attempt to apprehend accompanied by some form of physical resistance by an accused. United States v. Nixon, 21 U.S.C.M.A. 480, 45 C.M.R. 254

(1972); United States v. McCutchins, 37 C.M.R. 678 (A.B.R. 1967); Manual for Courts-Martial, supra, paragraph 174a.

In the instant case, there is ample evidence that Sergeant Belcher had both the authority and legal basis for apprehending the accused for offenses committed in his presence; there is also substantial proof that the accused physically resisted those attempting to restrain him, and that he ultimately was apprehended. The questions arising from the facts of this case are: (1) whether it is essential to prove the accused had knowledge that he was being apprehended, and (2) if such proof is required, whether the circumstances of the apprehension were sufficient to provide a reasonable man with the knowledge that there was an attempt to apprehend him.

■ Neither the Code, supra, nor the Manual expressly require as essential elements of the offense of resisting apprehension that the accused have knowledge that he is being apprehended, or that he be aware of the authority of the person to do so. The Manual does provide that if the accused had no reason to believe that the person attempting to apprehend him was empowered to do so, he may interpose this as an affirmative defense. Manual for Courts-Martial, supra, paragraph 174a. Nevertheless, the basic instruction recommended for all Air Force cases as to this offense includes a requirement that the court find that the accused knew that the person attempting to apprehend him was empowered and attempting to do so.[4] Thus, the Air Force treats both factors of knowledge as essential elements of the offense rather than affirmative defenses. In our opinion, this approach is absolutely necessary when oral or written notification does not accompany the attempt to appre-

---

**2.** For purposes of this decision, the words, apprehension and arrest are used interchangeably, although the military distinction is recognized. United States v. Ross, 13 U.S.C.M.A. 432, 32 C.M.R. 432, 435, n. 3 (1963). See also 6A C.J.S. Arrest § 2 (1975).

**3.** However, temporary detention, such as investigative stop, does not constitute "notification

of custodial arrest." United States v. Kinane, 24 U.S.C.M.A. 120, 124, 51 C.M.R. 310, 314, 1 M.J. 309, 314 (1976).

**4.** Air Force Manual 111–2, Court-Martial Instructions Guide, paragraph 3–36, 15 October 1971.

hend. In these circumstances it is clear that the government is responsible for presenting sufficient evidence to establish that the accused should have known that a lawful attempt was being made to apprehend him.

Our position in this regard is amply supported by the common law of civilian arrest, which is the practical equivalent of military apprehension. Thus:

> In order to constitute an act of arrest, there must be an intention or a purpose to take a person into the custody of the law, under a real or pretended authority, and an actual or constructive seizure or detention of such person, *which is so understood by the person arrested.* . . .

> A person's subjective belief or feelings are not controlling on the question as to whether he was under arrest at a particular time, although it is a factor to be considered, and the test is what a reasonable man, innocent of any crime, would have thought had he been in the same position.

.   .   .   .   .

> An officer must make a reasonable disclosure, adapted to the circumstances, of his character and purpose; but, as a general rule, the notice is sufficient when it is such as to inform a reasonable man of the authority and purpose of the one making the arrest, and the reason thereof.[5] (Emphasis supplied.)

And, as succinctly stated in *Schindelar v. Michaud,* 411 F.2d 80 (10 Cir. 1969), cert. denied, 396 U.S. 956, 90 S.Ct. 426, 24 L.Ed.2d 420 (1969):

> A person must be advised that he is being arrested and the reason therefore [sic] unless that person either knows or has reason to know that he is being arrested and why.

We find, therefore, that when an oral or written order is not given a suspect by a person lawfully attempting to apprehend him, the government must establish that the circumstances were such as would lead a reasonable man in the same position to conclude that an attempt was being made to apprehend him.

■ Turning to the situation before us, Sergeant Belcher did not by oral or written communication advise the accused of his intent to apprehend him; in fact, he admitted that when the struggle began, he had no such intention. Once Sergeant Belcher decided that the situation required an apprehension, the ensuing efforts to restrain and handcuff the accused by the several security policemen (and others) constituted sufficient notice of the intent to apprehend. In the light of these circumstances, we perceive no merit in the accused's contention that there was insufficient evidence to prove the offense of resisting apprehension.

■ We also find no merit in appellate defense counsel's assertion that a rehearing on the sentence is required because of the reviewing authority's disapproval of three of the offenses of which the accused was convicted. At trial, the military judge instructed the members that two of these offenses were multiplicious for sentencing purposes; further, the reviewing authority meaningfully reassessed the sentence on the basis of his disapproval of all three offenses in issue.

For the foregoing reasons, the findings of guilty and the sentence are

AFFIRMED.

BUEHLER, Senior Judge, and ORSER, Judge, concur.

---

5. 6A C.J.S. Arrest §§ 43a, 48 (1975). See also *United States v. Clark,* 294 F.Supp. 44 (DDC 1968), aff'd *Clemons v. United States,* 133 U.S. App.D.C. 27, 408 F.2d 1230 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).