. UNITED STATES, Appellee,

v.

**Private E2 Alfonso G. CHAVEZ, SSN 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, United States Army, Appellant.**

**SPCM 13132.**

U. S. Army Court of Military Review.

31 Oct. 1978.

618

Captain Paul T. Allen, Jr., JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, and Captain Grifton E. Carden, JAGC.

Captain Paul W. Jacobson, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, and Lieutenant Colonel R. R. Boller, JAGC.

Before MITCHELL, DRIBBEN and FELDER, Appellate Military Judges.

OPINION OF THE COURT

FELDER, Judge:

A Special court-martial composed of officers and enlisted personnel convicted the appellant of willfully disobeying a command given by a commissioned officer, resisting apprehension, and assaulting a military policeman in violation of Articles 90, 95, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 895 and 928. In addition, the military judge accepted the appellant's plea of guilty to breaking restriction, an infraction under Article 134, UCMJ, 10 U.S.C. § 934. The sentence imposed by the members and approved by the convening authority is a bad-conduct discharge. Therefore, this Court is required by Article 66, UCMJ, 10 U.S.C. § 866, to review this case.

The appellant argues that the trial judge should have dismissed the resisting apprehension and assault charges because of former jeopardy and *res judicata*; that the judge impermissibly denied him the testimony of an essential witness; and that the evidence is insufficient to support the conviction for resisting apprehension. I shall assess the validity of his argument on reflection in tranquility, a luxury not accorded to trial judges.

THE TRIAL

The resisting apprehension and assault offenses are the consequences of an incident that occurred at Fort Lewis, Washington, near midnight on 16 June 1977. At that time a privately owned vehicle was prohibited from entering the post by Specialist Four Balleza, a military police gate guard, because it did not display a post registration tag. A driver and passenger were riding in the front and a sleeping passenger in the rear. Specialist Balleza requested and received from the driver a military identification card, a California driver's license and a vehicle registration certificate. As Specialist Balleza examined the documents, he detected the odor of what he suspected to be marihuana. He directed the driver to park

on the side of the road and to turn off the engine. He advised the occupants, "I'm holding you under apprehension for what is suspected to be marihuana. . . ." He informed them to put their hands on their heads or on the dashboard or otherwise keep them in plain view.

Specialist Balleza requested his partner, Specialist Four Contreras, to summon a canine unit. The passenger in the front seat made several suspicious movements that caused Specialist Balleza to go from the driver's to the passenger's side of the vehicle. An argument developed between Specialist Balleza and the passenger. Eventually, the driver started the engine. As Specialist Balleza proceeded in front of the vehicle toward the driver's side, the driver accelerated, causing the vehicle to lightly touch Specialist Balleza on the left side. The episode, from the time the occupants were told they were under apprehension until the vehicle left, lasted twenty to thirty minutes.

Specialist Balleza still had possession of the identifying documents when the vehicle left. A traffic ticket for failure to obey a police officer and negligent driving was issued to the appellant because the military identification card and driver's license belonged to him. He was summoned to appear before a United States magistrate on 28 June 1977 to answer these charges. Prior to that time, however, all copies of the traffic ticket, except the appellant's copy, were withdrawn and the present charges were preferred against him for trial by court-martial.

On the 28th of June, the appellant appeared before a United States magistrate as ordered by the traffic ticket. After all other cases had been tried, the magistrate asked whether there were any parties there whose case had not been called. The appellant and Private First Class Paredes approached the bench and the appellant presented the magistrate with his copy of the traffic ticket. The magistrate inquired of his secretary whether there was a case prepared against the appellant. The secretary informed him that the ticket had been

voided by the military. The appellant then advised the magistrate that he had not been driving the automobile on the night of 16 June 1977 and that the person who had been driving was there with him. At that time Private Paredes stepped forward and said that he was the person who had been driving the vehicle. The magistrate drafted a complaint charging Private Paredes with negligent driving and using the appellant's drivers license. A military police officer who was present signed the complaint. The magistrate found Private Paredes guilty based on his plea and sentenced him for the incident. The magistrate then wrote "dismissed" on the appellant's traffic ticket.

## FORMER JEOPARDY

At a session conducted pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), the appellant moved to dismiss the resisting apprehension and assault charges because, as he also now contends, he was once tried for those offenses by a United States magistrate and no person may, without his consent, be tried a second time for the same offenses. Article 44(a), UCMJ, 10 U.S.C. § 844(a).

In military law, if acts constituting an offense under the Uniform Code of Military Justice, and under other federal criminal statutes, are tried by a court deriving its authority from the United States, such acts cannot be made the basis for trial by court-martial without an accused's consent. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 215*b* [hereinafter cited as MCM, 1969 (Rev)]. In this case the appellant was issued a traffic citation for failure to obey a police officer and negligent driving. These acts violate the Revised Code of Washington Sections 46.61.015 and 46.61.525, respectively. Since these acts of misconduct were committed on a military enclave within the State of Washington, they are cognizable as federal crimes pursuant to the As-

similative Crimes Act[1] and punishable in the military as violations of the "crimes and offenses not capital" provisions of Article 134, UCMJ, 10 U.S.C. § 934. *United States v. Wright*, 5 M.J. 106, 110 (C.M.A.1978); MCM, 1969 (Rev), paragraph 213*a* and *e*.

To deal with minor offenses of a civil nature committed by service members, including violations of state traffic laws, the commander in his discretion may invoke the Uniform Code of Military Justice or refer the matter to a United States magistrate. Paragraph 3c, Army Regulation 190–29, dated 17 June 1977; paragraph 4c, Army Regulation 27–44, dated 17 April 1969. The latter course of action is utilized most frequently in the disposition of minor traffic infractions.[2]

United States magistrates (formerly known as United States commissioners) are judicial officers appointed by federal district court judges under the authority of The Federal Magistrate Act (Public Law 90–578, October 17, 1968) as codified by 18 U.S.C. §§ 3401, 3402 (1976), to try persons accused of committing minor offenses. The trial may proceed on a complaint filed with the magistrate or on information filed with the clerk of the district court. Upon the appearance of the accused, the magistrate must inform him of the complaint or information against him and of any affidavit filed therewith, and of his right to be represented by retained or assigned counsel. The magistrate also must explain to the accused that he has a right to trial before a judge of the district court and a jury, and unless this right is specifically waived in writing, the magistrate is without authority to proceed with the trial.

I hold that because magistrate courts and courts-martial are creatures of the same sovereign, when asserted, the defense of former jeopardy will foreclose the trial of a service member by court-martial for crimes for which he has been subjected in a United States magistrate court. In this case, however, reasons dictate that the appearance of the appellant before the magistrate was not a trial as contemplated under the former jeopardy clause. First, the complaint against him was officially withdrawn prior to trial; therefore, no litigable issue existed. Second, the appellant did not grant written consent to be tried by the magistrate in order to vest the court with *in personam* jurisdiction over him. Third, he was not arraigned. Fourth, jeopardy did not attach because no evidence was presented against him. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, n. 15, 57 L.Ed.2d 24 (1978); *Lee v. United States*, 433 U.S. 23, 97 S.Ct. 2141, n. 3, 53 L.Ed.2d 80 (1977). The hearing before the magistrate was conducted pursuant to a complaint filed against Private Paredes and the evidence presented was solely for the purpose of determining the providency of his guilty plea. I conclude, therefore, that the trial of the appellant by court-martial did not offend the former jeopardy clause and the dismissal of the charges was not warranted.

## RES JUDICATA

The appellant also sought unsuccessfully at the trial to invoke the doctrine of

---

**1.** 1. Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment. 18 U.S.C. § 13 (1976).

2. Prosecution under the Assimilative Crimes Act is not to enforce the state law but to enforce the federal law, the details of which,

instead of being recited, are adopted by reference. *See Puerto Rico v. Shell Co.*, 302 U.S. 253, 266, 58 S.Ct. 167, 82 L.Ed. 235 (1937); *United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962).

**2.** The use of magistrate system rather than the Uniform Code of Military Justice has obvious advantages for service members. Most notable is that a record of the proceedings is not included in their personnel file. Additionally, the system provides the means to process and dispose of certain categories of minor offenses by mail. *See* paragraph 4, Army Regulation 190–29, dated 17 June 1977.

*res judicata* as a basis for dismissal of the same charges. The doctrine, though of civil origin, provides that a matter finally determined by a court of competent jurisdiction cannot be disputed between the same parties in a subsequent trial. Although it is an integral part of the protection against former jeopardy, *res judicata* may be asserted even though the defense of former jeopardy might not be available and the subsequent trial is for the same or different offense. *United States v. Saulter*, 5 M.J. 281, 283 (C.M.A. 1978); MCM, 1969 (Rev), paragraph 71*b*.

■■ The appellant avers that since the United States magistrate decided beyond a reasonable doubt that Private Paredes was the driver of the automobile involved in the incident on 16 June 1977, that matter cannot be relitigated and the Government should have been estopped from prosecuting him as the driver. This argument does not pass legal muster. With limited exceptions, one of the essential ingredients of *res judicata* is that the same parties are involved in both trials. *Harris v. Washington*, 404 U.S. 55, 56, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971); *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *see United States v. Hooten*, 12 U.S.C.M.A. 339, 341, 30 C.M.R. 339, 341 (1961). The defense is allowed, however, where offenses such as those involving conspiracy, subornation of perjury, bribery, etc., require more than one party for commission. Under these exceptional circumstances, not present here, the acquittal of one co-actor may be interposed at the trial of another. *United States v. Smith*, 20 U.S.C.M.A. 589, 44 C.M.R. 19 (1971); *United States v. Doughty*, 14 U.S.C.M.A. 540, 34 C.M.R. 320 (1964); *United States v. Kidd*, 13 U.S.C.M.A. 184, 32 C.M.R. 184 (1962). Because I have determined that the appellant was not a party to the magis-

trate proceedings, he cannot avail himself of the doctrine of *res judicata*.

■ Indeed, my ruling means that two persons, not acting in concert, may be convicted by the United States in different tribunals for the same crime, which was committed by only one individual, where one pleads guilty and the other challenges his guilt.[3] To rule otherwise would be to favor manipulation of the judicial system by wrongdoers who collude with innocent persons to accept responsibility for their misdeeds. I cannot countenance a situation where strong countervailing interests exist which merits judicial protection.

PERJURY AND SELF–INCRIMINATION

During the defense of the appellant to the charges of resisting apprehension and assaulting a military policeman, Private First Class Paredes was called as a defense witness but asserted his right against self-incrimination. The military judge conducted an inquiry in the absence of the court members to determine the propriety of his refusal to testify. It was revealed that Private Paredes was expected to testify that he had been the driver of the automobile involved in the incident and "concerning his appearance in a previous court" for using another person's license and negligent driving. The trial counsel interjected the following remark:

> The Government is not interested in prosecuting Paredes for driving a vehicle or assaulting a Military Policeman, the incidents occurring at the Madigan Gate. The Government is very interested in a possible perjury and the Government suspects the witness may do this in the future. To that end, the Government would like to have him warned of his 31 rights, but it's not interested at all in past

---

3. This holding has the tendency to appear contrary to law and equity but an analysis would reveal otherwise. Although the United States was a party to both trials, in the instance where Private Paredes pleaded guilty, it was relieved of the responsibility to prove his guilt. Essentially, he initiated a complaint against himself and convicted himself by his plea. The United States by all accounts was an inactive

party. The conduct of Private Paredes should not foreclose the United States from actively pursuing the conviction of Private Chavez, against whom it instituted criminal proceedings. In other words, the United States sought the conviction of only one party. Perhaps the result would have been different had the United States actively prosecuted two persons for an offense committed by only one.

misconduct. In other words, we suspect that he was about to—if he testifies, commit an offense.

On that basis, the trial judge ruled that Private Paredes' refusal to testify was justified and he would not be required to answer questions concerning "the offense on the 16th of June." The trial defense counsel then withdrew the request for Private Paredes to testify for the defense. Now the appellant complains that the judge's ruling improperly restricted his presentation of evidence.

■■■ A service member commits perjury as a witness when he, while under oath, willfully and corruptly gives false material testimony in a judicial proceeding. Article 131, UCMJ, 10 U.S.C. § 931. Also, as a witness, he cannot be compelled to answer any question the answer to which may tend to incriminate him. Article 31(a), UCMJ, 10 U.S.C. § 831(a). An incriminatory answer is a response which connects the witness to possible violations of criminal law.

What I have here are competing interests that can not be treated lightly. I must balance the appellant's right to the vital testimony of a witness that could exonerate him against the witness' claim of constitutional protection. In my opinion, the purpose of the privilege against self-incrimination is to protect a witness from giving evidence about his involvement or noninvolvement in a crime. It was not devised as a shield to guard a witness against the commission of a criminal offense. Simply stated, the privilege protects against evidence not wrongdoings. Since a sworn witness is expected to testify truthfully, he has no right to claim self-incrimination to avoid perjury. In this regard, the judge's ruling was incorrect.

Left to be decided is whether Private Paredes should have been compelled by the judge to testify that he was the driver of the automobile on 16 June 1977 and that he was convicted of using the appellant's drivers license and negligent driving. The appellant argues that Private Paredes had no

claim to the privilege against self-incrimination because his conviction for the driving incident was final and he could not be tried again. MCM, 1969 (Rev), paragraph 150*b*. He also states alternatively that the trial counsel tacitly granted immunity against further prosecution to Private Paredes. The Government counters with the argument that Private Paredes was not protected by the former trial because he could have been prosecuted for resisting apprehension and assault. The Government is uncertain whether Private Paredes had a tacit grant of immunity.

■■■ In spite of diverse opinions, it is clear to me that the trial counsel did not have the authority to tacitly grant immunity to Private Paredes because only a general court-martial convening authority or his agent is competent to do so. *United States v. Thompson*, 11 U.S.C.M.A. 252, 29 C.M.R. 68 (1960); MCM, 1969 (Rev), paragraph 68*h*. Moreover, during the course of a court-martial proceeding, the trial counsel is not an agent of the convening authority. He represents the United States. MCM, 1969 (Rev), paragraph 44*d*.

A witness in a criminal case cannot be compelled to incriminate himself unless there is "no possibility" that he will thereafter be subject to criminal prosecution for any "previously committed crimes" disclosed by his testimony. *United States v. Kirsch*, 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964); *United States v. Croley*, 50 C.M.R. 899 (A.F.C.M.R. 1975). The conviction of Private Paredes in the United States magistrate court for using the appellant's drivers license and negligent driving did not bar the possibility of subsequent prosecution for resisting apprehension or escape from lawful custody (Article 95, UCMJ).[4]

■■■ As discussed before, Article 44(a) provides that no person may, without his consent, be tried a second time for the same offense. Thus, the former jeopardy defense may be waived. However, where a witness is entitled to assert former jeopardy as a defense, he cannot claim the privilege

4. See pages 623, 624, *infra*, for a discussion of the appropriate offense.

against self-incrimination. MCM, 1969 (Rev), paragraph 150*b*.

The scope of the former jeopardy clause has been the source of considerable debate. There has been confusion over what is meant by the term "the same offense." In an attempt to give content to that phrase, the United States Supreme Court adopted the "same evidence test" in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The essence of the same evidence test is that when the same act or transaction constitutes a violation of two statutory provisions, the test to determine whether there are two offenses, or only one, is whether each provision requires proof of a fact which the other does not.[5] *Id.* 284 U.S. at 304, 52 S.Ct. 180; *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. Garner*, 529 F.2d 962 (6th Cir. 1976).

■■■ The general rule in the military is that once a person has been tried for an offense, he cannot be subsequently tried for an offense necessarily included therein. When tried for a lesser offense, he cannot be tried for a major offense which differs from the lesser offense in degree only. MCM, 1969 (Rev), paragraph 215*b*. Obviously, the military rule is more expansive than the same evidence test established by the United States Supreme Court.

■■■ In applying the same evidence test and the military rule to the facts of this case, I conclude that the conviction of Private Paredes for using another's drivers license and negligent driving would not preclude the possibility of his being subse-quently prosecuted for a different and separate offense under Article 95. It would not be permissible, however, to prosecute him for assaulting the military policeman because the essence of the negligent driving conviction was that the car lightly touched Specialist Balleza as it was driven away. There is no other evidence in the record to prove negligent driving. Therefore, the trial judge was correct in allowing Private Paredes to exercise his right against self-incrimination.[6]

## ARTICLE 95, UCMJ

■■■ Since early in their history, military courts have struggled with the factual distinction between resisting apprehension and escape from custody. *See, e. g. United States v. Rozier*, 1 M.J. 469 (C.M.A. 1976); *United States v. Ramirez*, 4 C.M.R. 543 (A.F.B.R. 1952); *United States v. West*, 1 C.M.R. 770 (A.F.B.R. 1951). Both courses of conduct are proscribed and made punishable by Article 95, UCMJ, 10 U.S.C. § 895. Resisting apprehension simply means active opposition to attempts to place one in lawful custody. On the other hand, escape from custody implies the unlawful freeing of oneself from completed apprehension. *See* Article 7, UCMJ, 10 U.S.C. § 807; *United States v. Noble*, 2 M.J. 672, 674 (A.F.C.M.R. 1976); MCM, 1969 (Rev), paragraph 174*a* and *c*. Whether one has resisted apprehension or escaped from custody is a question of fact. *See United States v. Kinane*, 1 M.J. 309, 314 (C.M.A. 1976). The line of demarcation between the two offenses is often obscure.

The gauge for determining whether an apprehension has been effected involves substance not form. The freedom of move-

---

5. The *Blockburger* test is not the only standard used by the United States Supreme Court for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first. See *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and *In re Nielsen*, 131 U.S. 176, 9 S.Ct.

672, 33 L.Ed. 118 (1889). In both cases the Supreme Court held separate offenses to be the same for purposes of protecting the accused from having to " 'run a gauntlet' a second time." *Brown v. Ohio*, 432 U.S. 161, 166, n. 6, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977).

6. Although Private Paredes did not testify, the same evidence attempted to be elicited from him was presented by the testimony of the clerk of the United States magistrate court and the record of his conviction.

ment of the person apprehended must be restrained and this must be communicated to him. *United States v. Coleman*, 41 C.M.R. 832, 835 (N.C.M.R. 1970); *United States v. McCutchins*, 37 C.M.R. 678, 680 (A.C.M.R. 1967). If the action taken to restrain locomotion falls short, and there is no submission, then apprehension is not ·completed. Accordingly, the fact that one is informed that he is being taken into custody is not, standing alone, sufficient to effect apprehension. *United States v. Stone*, 13 C.M.R. 906, 909 (A.F.B.R. 1953); *United States v. Mercer*, 11 C.M.R. 812 (A.F.B.R. 1953).

In this case, a military police officer halted an automobile at the entrance of a military installation. Because he suspected the three occupants of drug violations, he advised them that they were under apprehension, directed the appellant to pull to the side of the road, stop the engine and informed everyone to keep their hands in sight to await further investigation by a canine team. After waiting about twenty to thirty minutes, the appellant started the engine and left the scene in defiance of authority.

These facts amply demonstrate that apprehension over the appellant had been accomplished and for a considerable period of time he remained in the custody of the military policeman. The appellant complied with all the instructions given to him by the policeman and voluntarily submitted to his control. Certainly the apprehending officer could have attempted to gain physical custody over the person of the appellant by directing him to withdraw from the automobile but, apparently the officer was satisfied that apprehension could be effected with the appellant inside the automobile with his hands in plain view. As explained in ·*Ramirez* and *West*, custody is "a temporary status created to satisfy a particular need for authority by those performing law enforcement functions." For these reasons, the conviction for resisting apprehension must fall.

Accordingly, the findings of guilty of Charge III and its specification are set aside

and that charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error, the entire record and my action herein, the Court affirms the sentence.

Judge DRIBBEN concurs in results only.

Senior Judge MITCHELL did not participate in this opinion.